FILED & ENTERED

JAN 13 2026

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY ghaltchi   DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Clifton Kerr,<br><br>                           Debtor. | Case No.:    2:25-bk-14821-NB<br>Chapter:    7<br><br>**RECUSAL MEMORANDUM DECISION** |
| Clifton Kerr,<br><br>                         Plaintiff,<br>v.<br>State Of California; Jennifer C. Wong;<br>Melissa Coutts; Jovonne M. Phillips;<br>Superior Court Judge Leslie Gutierrez;<br>District Court Bankruptcy Judge Neil Bason;<br>And Kathy A. Dockery,<br>                     Defendants. | ☒ File in Adv. No.: 2:25-ap-01356-NB<br>   [Fed. Dist. Ct., Cent. Dist. Cal.<br>   Case No. 2:25-cv-03959-SPG-SSC] |
| Clifton Kerr,<br><br>                         Plaintiff,<br>v.<br>State Of California, Melissa Coutts,<br>McCarthy & Holthus LLP, Neil Bason, and<br>Kathy A. Dockery,<br><br>                    Defendants. | ☐ File in Adv. No.: 2:25-ap-01341-NB<br>   [LA County Superior Ct.<br>   Case No. 25PSCV01961]<br><br>Status Conference:<br>Date:  January 6, 2025<br>Time:  11:00 a.m.<br>Place: Courtroom 1545<br>      255 E. Temple Street<br>      Los Angeles, CA 90012<br>(or via Zoomgov per posted procedures) |

The above-captioned Debtor ("Mr. Kerr") and his wife have filed multiple bankruptcy cases trying to hold onto their (former) home at 3 Skyview Circle, Pomona, California 91766 (the "Skyview Property").  Having failed to stop a foreclosure sale, and facing eviction, Mr. Kerr has now filed civil actions in both Federal Court and State Court, against what appears to be everyone involved, including the Chapter 13 Trustee, Kathy A. Dockery ("Trustee") and the undersigned Bankruptcy Judge.

Trustee has filed notices of removal as to the actions in both Federal Court and State Court.  The case numbers are listed above in the caption, and these actions are referred to herein as the Federal Action (or, on this Bankruptcy Court's docket, "Adv No. -1356") and the State Action (or, on this Bankruptcy Court's docket, "Adv. No. -1341" and, with Adv. No. -1356, the "Adversary Proceedings").

The undersigned Bankruptcy Judge anticipates that, after he issues an order recusing himself, whichever judge is presiding over these matters likely will rule that Trustee's notice of removal of the Federal Action was ineffective, but that the State Action was effectively removed.  Meanwhile, however, the uncertainty over removal of the Federal Action has prompted Magistrate Judge Stephanie S. Christensen to withdraw the Report and Recommendation that she had provided to District Judge Sherilyn Peace Garnett.  *See* Federal Action (District Court, Cent. Dist. Cal., Case No. 2:25-cv-03959-SPG-SSC, dkt. 107) (the "Judge Christensen R&R") *and id.,* dkt. 116 (withdrawal).

In any event, after Trustee filed her notices of removal this Bankruptcy Court issued identical orders in both Adversary Proceedings setting the above-captioned Status Conference.  Appearances are as noted in the record.  Mr. Kerr elected not to appear, and accordingly he has waived and forfeited any right to present arguments or evidence contrary to the determinations in this Memorandum Decision.  *See Hamer v. Neighborhood Housing Serv's,* 138 S.Ct. 13, 17 n. 1 (2017) (distinguishing waiver and forfeiture).

At the Status Conference the undersigned Bankruptcy Judge made oral rulings, as supplemented herein.  First, Mr. Kerr's claims against the undersigned are completely frivolous; those claims are also barred by judicial immunity; and he has not presented any arguments or evidence that could reasonably call into question the impartiality of the undersigned.

Second, however, because Mr. Kerr has named the undersigned as a Defendant in both the Federal Action and the State Action, the undersigned will be disqualified from presiding over the Adversary Proceedings.  But that disqualification will only last until Mr. Kerr's claims against the undersigned are dismissed.

Identical copies of this Memorandum Decision are being issued in each Adversary Proceeding, and the undersigned will issue separate orders of recusal in each Adversary Proceeding.

**A. INTRODUCTION**

Whether or not Mr. Kerr has used any so-called "artificial intelligence" tools, the undersigned takes judicial notice that such tools appear be responsible for a surge in paperwork including (as in this case) multiple parallel proceedings in different *fora*.  That flood in paperwork and multiplicity of proceedings threaten to grind to a halt the wheels of justice.  In the hope of avoiding that outcome, and in the expectation of future matters similar to this one, the undersigned has engaged in a fairly extensive analysis of the disqualification issues.

The undersigned notes that statutes, rules, and ethical guidelines should be "construed, administered, and employed" to "secure the just, speedy,[1] and inexpensive determination" of all matters.  *See* Rule 1001(a) (Fed. R. Bankr. P.).  Consistent with that mandate, and preserving all parties' rights, the undersigned seeks to streamline these proceedings in two ways.

---

[1]     The "speedy" determination of the matters addressed herein has been somewhat impaired by two deaths in the family and other medical issues.  The undersigned anticipates fewer such issues in future.

First, this Memorandum Decision summarizes prior proceedings before this Bankruptcy Court, which play a large part in Mr. Kerr's claims.  Those summaries are not only relevant to the recusal analysis but may aid any new judge presiding over these proceedings.  Second, as part of the recusal analysis, this Memorandum Decision outlines some procedural alternatives that might expedite these matters.

**B. BACKGROUND**

**1. Bankruptcy cases**

Despite owing hundreds of thousands of dollars secured by a deed of trust on the Skyview Property, Mr. Kerr filed a chapter 13 plan in a prior bankruptcy case (the "Plan") that proposed to pay only $86.00 per month to cover all claims.  *See In re Kerr* (Case No. 2:24-bk-15212-NB, Bankr. C.D. Cal.) ("BK Case 2:24-15212"), dkt. 13, 17.  The holder of that deed of trust ("Wilmington Trust") objected to the Plan (*id.,* dkt. 17) and filed a motion seeking relief from the automatic stay in that case, including to foreclose on the Skyview Property.  *Id.* dkt. 18 (the "R/S Motion").  *See* 11 U.S.C. § 362(a) and (d).

The R/S Motion included a request that no future bankruptcy case would stay Wilmington Trust's remedies against the Skyview Property (so-called "*in rem*" relief from the automatic stay).  *See* 11 U.S.C. § 362(d)(4).  The basis for that relief was an alleged scheme to delay, hinder, or defraud creditors involving at least one prior bankruptcy case (actually six cases, all of which were dismissed), and alternatively involving a transfer of a partial interest in the Skyview Property that violated the loan documents (actually two such transfers): one to Mr. Kerr's wife and one to an individual named Pamela Gayles ("Ms. Gayles") (collectively, the "Unauthorized Transfers").  Mr. Kerr's arguments focus mostly on the deed to Ms. Gayles.

Mr. Kerr had no persuasive opposition to Wilmington Trust's R/S Motion.  He did not rebut Wilmington Trust's evidence that he owed hundreds of thousands of dollars secured by the Skyview Property; he offered no explanation of how he could pay that debt or otherwise make legitimate use of the bankruptcy system; he admitted to

1    transferring a partial interest in the Skyview Property to his wife; and he admitted to

2    "multiple bankruptcy … filings" by her.  BK Case 2:24-15212, dkt. 21, pp. 5-6.

3            Mr. Kerr did make two main assertions in opposition to the R/S Motion.  First, he

4    claimed that the multiple bankruptcy cases that stopped Wilmington Trust's collection

5    efforts were "attempts to reorganize finances under challenging circumstances, not part

6    of a deliberate scheme to delay, hinder, or defraud [Wilmington Trust]."  *Id.*, dkt. 21, pp.

7    5-6.  But this Bankruptcy Court views this as a distinction without a difference.  Mr.

8    Kerr's "attempts to reorganize [his and his wife's] finances" consisted of filing

9    bankruptcy petitions with no proper or feasible proposed use of the bankruptcy system,

10   which did nothing but delay and hinder the foreclosure.

11           Second, Mr. Kerr asserts that he "did not sign, record, or have any knowledge of

12   the Grant Deed [to Ms. Gayles]," which he described as a "*fraudulent*" grant deed.  *Id.*,

13   dkt. 21, p. 6 (emphasis added).  There was no evidence that any third party (*i.e.,*

14   someone other than Mr. Kerr or an agent for Mr. Kerr) generated that grant deed –

15   certainly there is no evidence that Wilmington Trust would have forged a grant deed to

16   stop its own foreclosure sale.

17           But, even supposing that the grant deed and the bankruptcy petition by Ms.

18   Gayles had all been some sort of fraud on Mr. Kerr (a supposition unsupported by any

19   evidence), that is irrelevant.  Regardless of that deed, Mr. Kerr's long history of non-

20   payment and his proposed Plan to pay $86.00 per month to all creditors with no

21   grounds for ignoring his debt to Wilmington Trust were more than sufficient "cause" for

22   relief from the automatic stay (11 U.S.C. § 362(d)(1)).

23           As for "*in rem*" relief (11 U.S.C. § 362(d)(4)), the statute requires only *one*

24   Unauthorized Transfer or, alternatively, *one* prior bankruptcy petition, as part of the

25   "scheme" to delay or hinder the foreclosure sale or defraud creditors.  *See id.*  As noted

26   above (i) Mr. Kerr admits to the transfer to his wife (and he makes no argument that this

27   transfer was authorized under the loan documents) and, alternatively, (ii) he admits to

28   not just one but "multiple" prior bankruptcy petitions by his wife to stop the foreclosure

1  sale.  Those things are not only grounds for "*in rem*" relief but also additional "cause" for

2  relief under 11 U.S.C. § 362(d)(1).

3  Based on Mr. Kerr's lack of any persuasive response to Wilmington Trust's R/S

4  Motion, this Bankruptcy Court granted that motion, including "*in rem*" relief.  BK Case

5  2:24-15212*, dkt. 25.  In addition, on September 12, 2024, this Bankruptcy Court held a

6  hearing on whether to confirm Mr. Kerr's proposed Plan but Mr. Kerr failed to appear or

7  oppose Trustee's request for dismissal.  That request was based primarily on Mr. Kerr's

8  failure to provide proof of income or identification to Trustee and his failure to propose

9  any proper use of the bankruptcy system.  This Bankruptcy Court dismissed that case.

10  *See id.,* dkt. 30.

11  About nine months later, on June 6, 2025, Mr. Kerr filed his bankruptcy petition

12  commencing this current bankruptcy case.  *In re Kerr* (Case No. 2:25-bk-14821-NB,

13  Bankr. C.D. Cal.) dkt. 1.  In both this case and his prior bankruptcy case he has filed

14  numerous papers repeating his assertions summarized above, and also seeking to

15  disqualify the undersigned Bankruptcy Judge for having granted the R/S Motion and

16  dismissed the prior bankruptcy case despite the "fraudulent" deed to Ms. Gayles.  This

17  Court denied all of these requests.  *See In re Kerr* (BK Case 2:24-15212-NB) dkt.

18  35&38, 52-53&54-55, 61-63&66-68 *and In re Kerr* (Case No. 2:25-bk-14821-NB, Bankr.

19  C.D. Cal.) dkt. 9&10, 13&54, 14&53, 15&19, 26&28, 37&66, 39&67, 61-62&64 (paired

20  motions and orders denying same).

21  **2. The Federal Action, notice of removal, and Adv. No. -1356**

22  The following summary of the Federal Action is provided for purposes of

23  assessing the recusal issues, including showing the similarity between the State Action

24  and the Federal Action, and to provide background for Trustee's "*Barton* doctrine"

25  defense.  On May 2, 2025 – *i.e.,* between the dismissal of his prior bankruptcy case and

26  the commencement of his current bankruptcy case – Mr. Kerr filed the Federal Action.

27  His First Amended Complaint ("FAC") seeks damages of $30 million jointly and

28  severally as against (A) the undersigned Bankruptcy Judge, (B) Trustee, (C) the State

of California, (D) Superior Court Judge Leslie Gutierrez, (E) the law firm McCarthy & Holthus, LLP, counsel for Wilmington Trust in Mr. Kerr's bankruptcy cases and in an unlawful detainer action against him, and (F) three attorneys with that firm: Melissa Coutts, Jennifer C. Wong, and "JoVonne [sic]" M. Phillips (whose first name is actually JaVonne) (collectively, with their law firm, the "Law Firm Defendants"). *See* Complaint in Federal Action (Ex. D to Record of all Documents, Adv No. -1356, adv. dkt. 4, at PDF pp. 19-57 of 526).

As summarized by Trustee, the FAC "essentially alleges deprivation of civil rights, violation of due process, conspiracy to commit real estate fraud, forgery, wrongful foreclosure, breach of contract and obstruction of the administration of justice."  Notice of Removal (Adv No. -1356, adv. dkt. 1) p. 3:1-2.  The allegations in the FAC are difficult to decipher, and it is not clear what Mr. Kerr alleges was wrongful about any act or omission by Trustee, but the FAC focuses largely on the allegedly fraudulent grant deed to Ms. Gayles.

The docket in the Federal Action reflects dozens of subsequent documents filed by Mr. Kerr, including, for example, many attempts to correct deficiencies in service, as well as, for example, a "Fourth Supplemental Complaint."  Federal Action (dkt. 87).  It appears that all amended or "supplemental" complaints after the FAC were ineffective because they were filed without authorization from the District Court.  *See, e.g.,* Notice to Filer of Deficiencies (Federal Action, dkt. 88) (Ex. MM to Record of All Docs. (Adv.No. -1356, adv. dkt. 4) at PDF p. 526 of 526).

In any event, on September 15, 2025, Trustee filed in this Bankruptcy Court a Notice of Removal of the Federal Action.  *See* Notice of Removal (Adv No. -1356, adv. dkt. 1) *and see also* Federal Action dkt. 89.  In that notice she asserts that Mr. Kerr's claims against her are barred by the "*Barton* doctrine."  As she summarizes that doctrine, it has been held to bar suits against a trustee in bankruptcy absent leave of the bankruptcy court, failing which "the other forum lacked subject matter jurisdiction over

1  the suit." *Id.* p. 4:5-6 (quoting *In re Crown Vantage, Inc.,* 421 F.3d 963, 971 (9th Cir.

2  2005), citing *Barton v. Barbour,* 104 U.S. 126, 127 (1881)).

3  On October 24, 2025, the Judge Christensen R&R was issued (Federal Action,

4  dkt. 107).  It includes the following proposed rulings.  First, "[t]he [District] Court lacks

5  jurisdiction over the claim(s) against the State of California," both under the Eleventh

6  Amendment to the Constitution and under 42 U.S.C. § 1983.  *Id.* p. 5:14-26.  Second,

7  "[t]he judges [both the State Court judge and the undersigned Bankruptcy Court judge]

8  have absolute judicial immunity and the bankruptcy trustee has absolute quasi-judicial

9  immunity."  *Id.* pp. 6:2-7:7.  Third, "[t]he [District] Court lacks jurisdiction to disrupt the

10  outcome of the unlawful detainer action under the Rooker-Feldman doctrine."  *Id.,* pp.

11  7:8-8:2.  Fourth, "[t]he Law Firm Defendants are entitled to have the FAC stricken under

12  California's anti-SLAPP statute as the claim(s) against them are improper."  *Id.*

13  pp. 8:3-11:19.  Fifth, the FAC "suffers from further flaws" such as failing to plead

14  compliance with the California Government Claims Act and purported claims against the

15  Law Firm Defendants that can only be brought against government actors.  *Id.*

16  pp. 11:20-13:16.  Sixth, because the foregoing issues cannot be cured, dismissal of the

17  FAC without leave to amend is proper.  *Id.* p. 13:17-25.

18  On November 14, 2025, Mr. Kerr filed in Adv No. -1356 an objection to the Judge

19  Christensen R&R.  *See* Objection to Magistrate Judge's Order [etc.] (Adv No. -1356,

20  adv. dkt. 11).  He asserts that it is void due to his lack of consent to a Magistrate Judge

21  presiding over that action.  *Id.,* p. 5, ¶ 4.  He also asserts that the Chapter 13 Trustee's

22  notice of removal to this Bankruptcy Court, "occurring after conversion of the underlying

23  bankruptcy case to chapter 7, was an ultra vires act by a party who no longer held

24  statutory authority" and that this "void removal" created a "jurisdictional conflict" between

25  the "dockets" in the Federal Action and in the Adversary Proceeding (Adv No. -1356).

26  *Id.,* p. 5, ¶ 3.  In addition, on November 17, 2025, Mr. Kerr filed in Adv No. -1356 a

27  "Demand for Default" against the Chapter 13 Trustee.  *See* Demand for Default [etc.]

28  (Adv No. -1356, adv. dkt. 14).

On November 24, 2025, Trustee filed her motion to dismiss (Adv. No. -1356, adv. dkt. 15).  Trustee reiterates that Mr. Kerr's claims against her are barred by the *Barton* doctrine and adds that they are also barred by quasi-judicial immunity and failure to state a claim on which relief can be granted.  *Id.  See also In re Gilman,* 656 B.R. 639 (C.D. Cal. 2024), *en banc review granted,* 158 F.4th 1082 (9th Cir. 2025) (trustees' quasi-judicial immunity).

The Federal Action includes a purported proof of service of the summons and complaint on the undersigned Bankruptcy Judge via U.S. mail addressed to the "U.S. Attorney General" in Washington, D.C.  *See* Proof of Service (Ex. E to Record of all Documents, Adv. No. -1356, adv. dkt. 4, at PDF pp. 58-60 of 526).  There is no evidence that the Attorney General of the United States was authorized to accept such service.  In any event, on October 6, 2025, attorneys with the local office of the United States Attorney filed a motion, in Adv. No. -1356 and on behalf of the undersigned Bankruptcy Judge, to dismiss Mr. Kerr's claims (the "MTD") based on judicial immunity. *See* MTD (Adv. No. -1356, adv. dkt. 2).

**3. The State Action, notice of removal, and Adv. No. -1341**

On May 29, 2025 – *i.e.,* between the dismissal of his prior bankruptcy case and the commencement of this current bankruptcy case – Mr. Kerr filed the State Action.  He seeks damages of $60 million jointly and severally as against (A) the undersigned Bankruptcy Judge, (B) Trustee, (C) the State of California, (D) Wilmington Trust's counsel McCarthy & Holthus, LLP, and (E) one of its attorneys: Melissa Coutts.  *See* Complaint in State Action (Ex. A to Record of all Documents, Adv. No. -1341, adv. dkt. 7, at PDF pp. 6-23).

As summarized by Trustee, the Complaint parallels the FAC in the Federal Action: it "essentially alleges deprivation of civil rights, violation of due process, conspiracy to commit real estate fraud, forgery, wrongful foreclosure and breach of contract."  Notice (Adv. No. -1341, adv. dkt. 1) p. 2:20-21.  As with the Federal Action, the specific allegations in the Complaint are difficult to decipher, and it is not clear what

Mr. Kerr alleges was wrongful about any act or omission by Trustee, but the Complaint

focuses largely on the allegedly fraudulent grant deed to Ms. Gayles.

On August 15, 2025, Trustee filed in this Court a Notice of Removal of the State

Action.  *See* Notice (Adv. No. -1341, adv. dkt. 1).  In that notice she asserts that, as with

the Federal Action, Mr. Kerr's claims are barred by the *Barton* doctrine.  *Id.* p. 3:21-23

(quoting *In re Crown Vantage, Inc.,* 421 F.3d 963, 971 (9th Cir. 2005), citing *Barton v.*

*Barbour,* 104 U.S. 126, 127 (1881)).

On September 8, 2025, Mr. Kerr filed a notice in Adv. No. -1341 (the State

Action) that "removal is proper" and "divested" the State Court of jurisdiction.  *See*

Notice (Adv. No. -1341) adv. dkt. 2.  The next day in the same action Mr. Kerr filed a

"Notice of Recusal of Magistrate [sic] Judge [possibly meaning the undersigned

Bankruptcy Judge?] Pursuant to 28 [U.S.C.] Sec. 455," which asserts that the

"magistrate [sic] judge" must not preside over the action.  *Id.,* adv. dkt. 3.  On

September 24, 2025, Mr. Kerr filed a document asserting, among other things, that "the

money the bank is claiming was a loan" was "generated by Pamela Gayle[s]/Doe's

signature" and this "fatal flaw robbed the court of jurisdiction."  Motion for 9 Million in

Sanction Pursuant to Rule 11 (*id.,* dkt. 10) p. 3.  The same day he filed a "Demand to

Strike Trustee Kathy A. Dockery, Staff Attorneys, 'Notice of Appearance' from the

Record, A Corporation Cannot Represent It's Self In Court."  Demand to Strike (*id.,* dkt.

11).

Meanwhile the documents filed in the State Court raise essentially the same

issues addressed in the Judge Christensen R&R, including a motion to strike (anti-

SLAPP motion under Cal. Code Civ. P. § 425.16) filed by Defendants McCarthy &

Holthus, LLP and Melissa R. Coutts (Ex. F to Record of all Documents, Adv. No. -1341,

adv. dkt. 7, at PDF pp. 89-100 of 272) and a demurrer filed by the State of California

(*id.*, Ex. J, at PDF pp. 222-248 of 272).  On September 9, 2025, the State Court issued

a minute order noting Trustee's notice of removal, ordering all proceedings in State

Court stayed, and setting a status conference in State Court regarding the "Status of

Bankruptcy" for January 14, 2026, at 9:00 a.m.  *See* Minute Order (Ex. L to Record of all Documents, Adv. No. -1341, adv. dkt. 7, at PDF pp. 269 of 272).

On November 24, 2025, Trustee filed her motion to dismiss (Adv. No. -1341, adv. dkt. 14).  As in the Federal Action, Trustee argues that Mr. Kerr's claims against her are barred by the *Barton* doctrine, quasi-judicial immunity, and failure to state a claim on which relief can be granted.  *Id.*

Also like the Federal Action, there is no proof of service on the undersigned Bankruptcy Judge of the summons and complaint in the State Action or in Adv. No. -1341.  *Cf., e.g.,* Proofs of Service (Ex. D to Record of all Documents, Adv. No. -1341, adv. dkt. 7, at PDF pp. 79-86 of 272) (purporting to show service on other named defendants but not Bankruptcy Judge).  On October 6, 2025, attorneys with the United States Attorney filed, on behalf of the undersigned Bankruptcy Judge, a motion to dismiss Mr. Kerr's claims against him ("MTD") based on judicial immunity.  MTD (*id.,* dkt. 13).

## C. JURISDICTION AND AUTHORITY

### 1. The effect of the notices of removal

The undersigned Bankruptcy Judge believes that the notice of removal of the Federal Action was a legal nullity because any action pending in a federal District Court cannot be removed to a Bankruptcy Court.  *See* Norton Bankr. Law and Practice 3d § 4:38 (current through Oct. 2025 update); *In re Halvorson,* 2018 WL 6728484, at *7–9 (C.D. Cal., Case No. No. 8:18-cv-00525 JVS, Dec. 21, 2018); *In re Curtis,* 571 B.R. 441 (9th Cir. BAP 2017); *Thomas Steel Corp. v. Bethlehem Rebar Indus.,* 101 B.R. 16, 19-20 (Bankr. ND Ill. 1989).[2]

---

[2]      Any removal of an action pending in the District Court to this Bankruptcy Court would raise Constitutional problems.  First, as explained in *Thomas Steel,* if any litigant could remove a matter from a District Court at will – "presumably even [a matter] as to which the reference had been withdrawn" – with no prior review by any District Court, that would "severely undermine the Article III supervision that Congress intended as a remedy for the defects found by the Supreme Court in [*Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50 (1982)]." *Thomas Steel,* 101 B.R. 16, 20.  Second, because the removal statute provides that the court to which the action is removed has complete discretion whether or not to remand the matter, any Bankruptcy Court to which an action was removed would have discretion that is apparently "unreviewable" (*id.*) by an Article III Court (at least unless and until

But for two reasons the undersigned is not making any final ruling on that issue. First, it is not necessary to decide the issue: whether or not Trustee's notice of removal was effective, at the very least it commenced Adv No. -1356, so the undersigned still has to address the recusal issues as to that Adversary Proceeding.

Second, once the undersigned has decided that recusal is required, the undersigned should not make rulings on substantive issues.  Therefore, it appears appropriate to leave any decision about the effectiveness of Trustee's notice of removal to whichever judge(s) are presiding in future over the Federal Action and over Adv. No. -1356.  Of course, if two different judges end up presiding over those two distinct

---

an appeal from the Bankruptcy Court's final judgment to the District Court or the Court of Appeals).  For both reasons, Trustee's attempted removal of the Federal Action was ineffective as a matter of Constitutional law.

_Note_: As an alternative to the Constitutional arguments, _Thomas Steel_ and other authorities state that the "plain meaning" of the statue does not permit removal from a District Court to a Bankruptcy Court.  They reason that the statute provides for removal to the "district court" (28 U.S.C. § 1452(a)) and, as one decision puts it, it "is illogical to interpret the bankruptcy removal statute to authorize removal **from** a district court **to** the district court."  _Curtis,_ 571 B.R. 441, 445 (emphasis in original, citation omitted); _and see Thomas Steel,_ 101 B.R. 16, 19.

The undersigned respectfully disagrees.  First, the statute states that "_any_" civil action (with inapplicable exceptions) may be removed (28 U.S.C. § 1452(a), emphasis added), and it is contrary to the plain meaning to say that "any" does not mean "any."  True, § 1452 appears in a chapter of title 28 that partially refers to "state" proceedings.  But the full title of Title 28, Chapter 89, is "_District Courts_; Removal of Cases from State Courts" (emphasis added), and the emphasized language shows that the chapter is broader than just removal of State Court cases.  In addition, § 1452 itself refers to proceedings pending before the "_United States_ Tax Court" (emphasis added), so clearly the specific provisions of § 1452 were intended to cover federal proceedings, as acknowledged by _Curtis_.  _See Curtis,_ 571 B.R. 441, 444 n. 2 (citing authorities so holding).

Second, there is nothing illogical about removing a proceeding pending before (District) Judge X to a different proceeding, with different parties, pending before (Bankruptcy) Judge Y (to whom the bankruptcy case has been referred).  That is how the statutory scheme works as a whole: the removal "to the district court" really means removal to "the bankruptcy judges [that] constitute a unit of the district court" and who are collectively "known as the bankruptcy court."  28 U.S.C. § 151.  _See also_ 28 U.S.C. §§ 157(a), 1452(a).

Third, it makes logical and practical sense to recognize that the authority to remove "any" civil proceeding includes federal actions, because removal of a civil action pending in Federal Court could be just as important as removal of a civil action pending in State Court.  For example, "Congress's purpose of centralizing bankruptcy litigation" (_Curtis,_ 571 B.R. 441, 445, citation omitted) could be served by permitting the Bankruptcy Court to temporarily stay a very expensive removed civil action (in which the parties are arguing over how to divide assets of a bankrupt entity) until it is known whether there are any unencumbered assets to be divided.  True, a party to the bankruptcy case could ask the District Court to stay the federal action, but it is not clear that such a party would even have standing to be heard in that federal action, so it is logical for Congress to have provided a mechanism by which bankruptcy-related litigation could be removed and such issues could be addressed.

To be clear, the undersigned Bankruptcy Judge still believes that an action cannot be removed from a District Court to the Bankruptcy Court for Constitutional reasons.  It is only the "plain meaning" analysis with which the undersigned respectfully disagrees.

matters (or, worse yet, if different judges preside over the Federal Action, Adv.

No. -1356, the State Action, and Adv. No. -1341) then there is a risk of inconsistent

rulings, which is one reason why this Memorandum Decision later recommends to the

District Court that it withdraw the reference and consolidate all matters before it.

In any event, turning to the State Action, the notice of removal was effective, and

this Bankruptcy Court has "arising under" and "arising in" jurisdiction, or at least "related

to" jurisdiction (28 U.S.C. § 1334(b)), on multiple alternative grounds: (i) under the

*Barton* doctrine, alternatively (ii) based on Trustee's assertion of quasi-judicial immunity,

and alternatively (iii) because Mr. Kerr's claims in the State Action are inextricably

intertwined with his bankruptcy cases.  *See Crown Vantage,* 421 F.3d 963, 971

(jurisdictional effect of *Barton* doctrine as applied to bankruptcy trustees); *and see*

*generally In re AWTR Liquidation, Inc.*, 547 B.R. 831 (Bankr. C.D. Cal. 2016) (Bason,

J.) (general examination of bankruptcy courts' jurisdiction and authority).

In sum, the undersigned Bankruptcy Judge has jurisdiction and authority to

address the disqualification issues in these proceedings.  That is true regardless of

whether Trustee's notice of removal of the Federal Action was effective.

**2. Disqualification: whether the undersigned has authority to continue**
**presiding over these Adversary Proceedings**

A judge who is named as a defendant generally cannot preside over that specific

lawsuit.  28 U.S.C. § 455(b)(5)(i).  Although there are some exceptions, the undersigned

Bankruptcy Judge is not persuaded that he can preside over the two Adversary

Proceedings as long as they include claims against him (even though such claims are

entirely frivolous, they are completely barred by judicial immunity, and there are no

reasonable questions about the impartiality of the undersigned).

A different analysis applies to all *other* proceedings.  The undersigned

Bankruptcy Judge has already determined that he is *not* disqualified from presiding over

matters other than the Adversary Proceedings, including Mr. Kerr's present bankruptcy

case and any future bankruptcy cases.[3]  In addition, in the opinion of the undersigned,

after Mr. Kerr's claims against the undersigned are dismissed, any new judge presiding

over the Adversary Proceedings may transfer them back to the undersigned, in whole or

in part, or may decide to retain those matters or take other action, all as further

explained below.

### a. Overview of disqualification

Some sources use "recusal" to mean withdrawal on the judge's own initiative,

and "disqualification" to mean withdrawal on the motion of a party, but the two terms

commonly are used interchangeably, and "disqualification" is often used as the more

general term encompassing both concepts.  This Bankruptcy Court will do likewise,

except when citing others who have used the term "recusal."  *See* Geyh & Kimberling,

Judicial Disqualification, An Analysis of Federal Law (Fed. Judicial Center, 3d Ed.,

2020, Markarian Ex.) ("Geyh & Kimberling, Judicial Disqualification"), Introduction at

p. 2.

Two sections within Title 28 of the United States Code are relevant: § 144 and

§ 455.  The ethical cannons parallel the latter statute.[4]

---

[3] In papers filed in his bankruptcy case-in-chief, Mr. Kerr repeatedly has taken the position that the undersigned Bankruptcy Judge is disqualified from presiding over *any* matters involving him.  *See, e.g.*, Mandatory Notice and Demand for Disqualification and Recusal of Bankruptcy Judge Neil W. Bason and Trustee Kathy A. Dockery Pursuant to 28 U.S.C. § 455(a), (b)(1), and (b)(5)(i) (Case No. 2:25-bk-14821-NB, dkt. 15); Notice of Recusal of Magistrate [sic] Judge Pursuant to 28 USC Sec. 455, 28 USC Sec. 144 (*id.,* dkt. 62).

[4] The Code of Conduct for United States Judges states, in part:
> (C) Disqualification.
> (1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which: …
> > (d) the judge or the judge's spouse, or a person related to either within the third degree of relationship, or the spouse of such a person is:
> > > (i) a party to the proceeding, or an officer, director, or trustee of a party; …
> (3) For the purposes of this section: …
> > (d) "proceeding" includes pretrial, trial, appellate review, or other stages of litigation.
> [Cannon 3C, Code of Conduct for United States Judges]

The analysis set forth in the remainder of the text is equally applicable under the ethical cannons as it is under the statutes.

Under both statutory sections, the Court of Appeals for the Ninth Circuit has "held repeatedly that the challenged judge himself should rule on the legal sufficiency of a recusal motion in the first instance." *United States v. Studley,* 783 F.2d 934, 940 (9th Cir. 1986) (citations omitted). The Ninth Circuit has expressly rejected arguments that someone else, such as the "Chief Judge or a committee of disinterested judges from the District" should rule on a recusal motion. *Id.*

There are good reasons for this process. First, a litigant should not be able instantly to disqualify a judge simply by uttering the words "recuse" or "disqualify." Second, the judge whose disqualification is being sought knows the most about the purported reasons for disqualification, so it makes sense for that judge to address the issues in the first instance (subject to appellate review). Third, any assessment of proposed disqualification is a balancing act: "there is as much obligation for a judge *not* to recuse when there is no occasion for [the judge] to do so as there is for [the judge] to do so when there is." *Hinman v. Rogers,* 831 F.2d 937, 939 (10th Cir. 1987) (citations omitted, emphasis added). *See also* Canon 3A(2), Code of Conduct for United States Judges ("A judge should hear and decide matters assigned, unless disqualified ...").

The statutes, and the decisions interpreting them, reflect this balancing act. On the one hand, appropriate disqualification promotes fairness to litigants, public perception of the courts' legitimacy, and promotion of civic virtue by judges. *See* Geyh & Kimberling, Judicial Disqualification, Part I.B., at pp. 7-8. On the other hand, "unduly rigorous disqualification" would have several negative consequences.

First, it would "enable litigants and their lawyers to game the system" – *e.g.,* judge shopping and causing undue delays and increased expense. *Id.* at p. 9. Second, instead of bolstering public confidence in the judiciary it could undermine that confidence because "a system in which judges are forever being challenged and removed could engender the [inaccurate] perception that the judiciary is awash with bias." *Id.,* p. 8. Third, disqualifying judges too readily would "put a strain on the judicial workforce that jeopardizes the expeditious administration of justice." *Id.*

For all of these reasons, this Bankruptcy Court must be neither too hasty nor too reluctant to determine that disqualification is required in these Adversary Proceedings.

### b. Disqualification is _not_ appropriate under 28 U.S.C. § 144

Mr. Kerr has not established any grounds for disqualification under 28 U.S.C. § 144:

> § 144. Bias or prejudice of judge
> Whenever a party to any proceeding in a district court makes and files a timely and _sufficient_ affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
> The affidavit shall _state the facts and the reasons for the belief that bias or prejudice exists_, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time.  A party may file only one such affidavit in any case.  It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.  [28 U.S.C. § 144 (emphasis added).

The test for disqualification is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." _Ronwin v. State Bar of Arizona_, 686 F.2d 692, 700-01 (9th Cir. 1981) (citation and internal quotation marks omitted), _rev'd on other grounds, Hoover v. Ronwin,_ 466 U.S. 558, 566 n. 14 (1984).  Mr. Kerr has not filed any affidavit, let alone a "sufficient" affidavit, nor has he presented any other evidence that could conceivably meet this standard.

Mr. Kerr's sole allegation and argument is that the undersigned Bankruptcy Judge should have decided the merits differently.  He appears to believe that failure to rule in his favor establishes some sort of complicity in the vaguely alleged fraud on him involving the deed to Ms. Gayles.

That assertion is frivolous and no reasonable person would question the impartiality of the undersigned Bankruptcy Judge.  There are no proper grounds for disqualification under § 144.  _See, e.g., Pesnell v. Arsenault,_ 543 F.3d 1038, 1044 (9th Cir. 2008) (judicial rulings alone are almost never a valid basis to disqualify a judge, and

broad allegations of bias failed to demonstrate improper favoritism); *United States v. Wilkerson,* 208 F.3d 794, 797 (9th Cir. 2000) (judge's views on legal issues may not serve as basis for motions to disqualify).  *See also Hinman v. Rogers,* 831 F.2d 937, 939 (in assessing sufficiency of affidavits under 28 U.S.C. § 144, "the judge may not consider the truth of the facts alleged" but "conclusions" and "opinions" are not sufficient to form a basis for disqualification; facts must be stated with "particularity" and without "incorporation by reference"; affidavit "is strictly construed against the affiant"; and "there is a substantial burden on the moving party to demonstrate the judge is not impartial.") (citations omitted).  *See also* Advisory Opinion No. 103 (reproduced in 2B *Guide to Judiciary Policy*, § 220).

Moreover, the Ninth Circuit has held that a judge is "not disqualified" under § 144 "merely because a litigant sues or threatens to sue him."  *Ronwin v. State Bar of Arizona*, 686 F.2d 692, 701 (citation omitted).  "Such an easy method for obtaining disqualification should not be encouraged or allowed."  *Id.  See also Studley,* 783 F.2d 934, 940 (following *Ronwin*); *Gabor v. Seligmann,* 222 Fed.Appx. 577, 578 (9th Cir. 2007) (following *Ronwin* and *Studley*).

The proper remedy for any party who believes that the judge's factual findings or legal rulings are incorrect is to appeal.  The remedy is not to sue the judge or seek the judge's disqualification.

### c. Disqualification is *<u>not</u>* appropriate under 28 U.S.C. § 455(a) or (b)(1)

The above analysis under § 144 applies equally to subsections "(a)" and "(b)(1)" of 28 U.S.C. § 455:

> § 455. <u>Disqualification of justice, judge, or magistrate judge</u>
> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might *<u>reasonably</u>* be questioned.
> (b) [The judge] shall also disqualify himself in the following circumstances:
>     (1) Where he has a *<u>personal bias or prejudice</u>* concerning a party …;
> [28 U.S.C. § 455(a) & (b)(1).]

Again, Mr. Kerr has not alleged sufficient facts to show any lack of impartiality, nor any personal bias or prejudice against him.  Rulings against him are insufficient to meet his burden of proof.  See *Pesnell,* 543 F.3d 1038, 1043-44 (decided under both § 144 and § 455).  Nor are Mr. Kerr's lawsuits against the undersigned Bankruptcy Judge sufficient to establish any "reasonabl[e]" question of any lack of impartiality, nor to establish any "personal bias or prejudice."

In other words, any reasonable person with knowledge of all the facts would conclude that these statutory tests were not met just because Mr. Kerr disagrees with some of the rulings of the undersigned and has used that as a ground to bring claims against him, especially when those claims on their face are both frivolous and absolutely barred by judicial immunity.  Thus, Mr. Kerr's lawsuits do not require disqualification under § 455(a) or (b)(1).  *See Ronwin,* 686 F.2d 692, 700-01; *Studley,* 783 F.2d 934, 940; *Gabor,* 222 Fed.Appx. 577, 578.

### d. Disqualification *is required* by 28 U.S.C. § 455(b)(5)(i)

Subsection "(b)(5)" of 28 U.S.C. § 455 provides:

> (b) [The judge] shall also disqualify himself in the following circumstances:
> …
> (5) He [or a relative]:
> (i) Is a *party to the proceeding* …;
> [28 U.S.C. § 455(b)(5)(i) (emphasis added).]

As noted by District Judge Dale S. Fischer (Central District of California), although the language of § 455 appears to be dispositive, there may be some exceptions:

> [Section 455] bars a judge from presiding over a proceeding if she [or he] is a party to the proceeding.  *See* 28 U.S.C. § 455(b)(5)(i).  *Although this … provision would seem to be dispositive, courts have not read it to be so*. [*Raiser v. City of Murrieta,* 2019 WL 11556743 at *2 (C.D. Cal. 2019) (citing Ninth Circuit's decisions in *Ronwin* and *Gabor*) (emphasis added).]

Nevertheless, the undersigned is not persuaded that any of the exceptions to § 455(b)(5)(i) apply in the circumstances of these Adversary Proceedings.  First,

decisions cited in *Raiser* state broad principles and do not quote or analyze the specific

language of § 455(b)(5)(i).

Second, *Raiser* itself involved a litigant who had also sued every judge in two

divisions of the district.  *Id.*  In that situation it appears that the "rule of necessity" could

be applied, because if <u>all</u> judges in the venue are subject to disqualification then one of

them must hear the matter or "the case cannot be heard otherwise."  *Ignacio v. Judges

[etc.],* 453 F.3d 1160, 1163 (9th Cir. 2006); *and see also United States v. Will,* 449 U.S.

200 (1980).  But Mr. Kerr has not sued every Bankruptcy Judge in this division or district

(so far as the undersigned is aware).

Third, although the "rule of necessity" might apply if Mr. Kerr had a sufficient

track record of suing judges who ruled against him, or alternatively there might be some

other implicit limits on the seemingly dispositive language of § 455(b)(5)(i), the

undersigned is not persuaded that Mr. Kerr has quite reached those limits.  *Cf. Raiser,*

2019 WL 11556743 at *2 ("even if there were other judges in this district available to

preside over this matter, the Court finds that 28 U.S.C. § 455 does not mandate

disqualification here").  Unlike *Raiser*, which involved a long history of "naming judges

as defendants and then seeking disqualification" (*id.*), Mr. Kerr has sued only two

judges so far as the undersigned is aware – the undersigned and Judge Gutierrez of the

State Courts.  Suing a third judge might well tip the balance, but in the face of the

seemingly absolute disqualification of § 455(b)(5)(i), the undersigned is not prepared to

rule that disqualification can be excused on the present record.

For all of these reasons, the undersigned Bankruptcy Judge is not able to preside

over the Adversary Proceedings at present.  But that is not the end of the analysis.

**e. Reassignment could be either to another Bankruptcy Judge,
randomly selected from within this district, or to the District Judge**

Under § 455(b)(5)(i), as discussed above, the judge "shall" disqualify himself or

herself if the judge "is a party to the proceeding."  The statute does not specify what

happens when the judge is disqualified.  The normal process is that the judge "simply

steps aside and allows the normal administrative processes of the court to assign the case to another judge." *Will,* 449 U.S. 200, 212.

But the undersigned is not aware of any reason why it would be improper for the District Judge (who has not been sued) to withdraw the reference under 28 U.S.C. § 157(d), which would be an alternative way to reassign the Adversary Proceedings to a judge who is not disqualified. Of course, this type of reassignment would only apply if the District Judge elected to withdraw the reference.

In addition, there is nothing improper about the undersigned analyzing which of these two permissible paths might be best suited to avoid needless delay, expense, and waste of judicial resources, while preserving all parties' rights to be heard on the merits. Indeed, consideration of such issues is required by Rule 1001(a) (Fed. R. Bankr. P.) (duty to pursue "just, speedy, and inexpensive determination" of all matters). The Court of Appeals for the Ninth Circuit has held: "we refuse to construe the word 'proceeding' [from which the judge is disqualified] to include the performance of ministerial duties such as assigning a case to another judge." *In Re Cement Antitrust Litigation (MDL No. 296),* 673 F.2d 1020, 1024-25 (9th Cir. 1982) (citation omitted).

Therefore, the undersigned recommends to the District Court (pursuant to 11 U.S.C. § 105(a)) that it consider withdrawing the reference. The reasons are: (i) to avoid duplicative proceedings; (ii) to avoid involving yet another judge in these matters; and (iii) to streamline these proceedings by avoiding jurisdictional "ping-pong" and mooting various arguments by Mr. Kerr regarding the authority of the Bankruptcy Court.

Of course, any withdrawal of the reference is entirely within the discretion of the District Court. If the District Court prefers not to withdraw the reference, the undersigned knows that the other Judges of this Bankruptcy Court are ready and willing to adjudicate whatever matters are randomly assigned to them by the Clerk of this Bankruptcy Court.

**f. Any disqualification will apply to the Adversary Proceedings, but not as to Mr. Kerr's bankruptcy cases**

In addition to being able to perform "ministerial duties" *within* the Adversary Proceedings after any disqualification, the undersigned is not disqualified in *other* proceedings, such as Mr. Kerr's bankruptcy cases.  Although the statute defines "proceeding" broadly, that term is not without limits:

> (d) For the purposes of this section …:
> (1) "proceeding" includes pretrial, trial, appellate review, or other stages of litigation;
> [28 U.S.C. § 455(d)(1).]

Mr. Kerr's bankruptcy cases are different from the Adversary Proceedings.  The case numbers are separate from the adversary proceeding numbers, so the bankruptcy cases are not the same "proceeding" in any formal sense.  Nor are the bankruptcy cases the same "proceeding" in any practical sense once the Adversary Proceedings have been assigned to a new judge.  In addition, reading the statute to require *per se* disqualification of the undersigned from presiding over Mr. Kerr's bankruptcy cases would run afoul of the above-cited authority that disqualification is not required simply because a disgruntled litigant sues the presiding judge (in an action other than the one over which the judge is presiding), and that such disqualification would be too "easy" a way to evade any judge the litigant dislikes.  *Ronwin*, 686 F.2d 692, 701.

On a related issue, the undersigned is aware of authority that *partial* recusal is permitted in some circumstances.  In other words, conceivably any disqualification of the undersigned could be limited to Mr. Kerr's (frivolous and barred) claims against the undersigned, while the undersigned could continue to preside over claims against all other defendants.  *See Gordon v. Olguin,* 2024 WL 5411363 at *3 (C.D. Cal. 2024) (Gutierrez, J.) (distinguishing *U.S. v. Feldman,* 983 F.2d 144 (9th Cir. 1992)); *and see also Kelmar v. Bank of Am. Corp., Gutierrez, J., et al,* 2012 WL 12854894 at *3-4 (C.D. Cal. 2024) (Gutierrez, J.), *merits decision at* 2012 WL 12850425 (C.D.Cal. 2012), *aff'd* 599 Fed.Appx. 806 (9th Cir. 2015).

But in the view of the undersigned, Mr. Kerr's claims against Trustee and others are too closely intertwined with his claims against the undersigned to support such partial recusal.  Accordingly, so long as Mr. Kerr's claims against the undersigned are not dismissed, disqualification applies to the entire Adversary Proceedings.

**g. Disqualification will last only until Mr. Kerr's claims against the undersigned are dismissed**

The undersigned Bankruptcy Judge is confident that Mr. Kerr's claims against the undersigned will be dismissed, both because they are entirely frivolous and because they are absolutely barred by judicial immunity.  Once those claims are dismissed, the Adversary Proceedings could be transferred back to the undersigned.

True, the above-quoted definition of the "proceeding" includes appellate review, and the general rule is that anything more than ministerial involvement after a judge disqualifies himself or herself is error.  *See generally Stringer v. United States,* 233 F.2d 947, 948 (9th Cir. 1956).  Therefore, arguably the undersigned would be disqualified unless and until final affirmance of any order dismissing Mr. Kerr's claims against the undersigned – *i.e.,* after review by the Ninth Circuit and denial of any petition for certiorari, which could take years.

But this would take disqualification too far.  *Stringer* itself noted that, in addition to "ministerial duties short of adjudication," "[t]here may be other instances where a judge disqualifying himself could resume direction or even decide the issues."  *Stringer,* 233 F.2d 947, 948 n. 2.  The statute only requires disqualification when the judge is "a party to the proceeding" (28 U.S.C. § 455(b)(5)(i)) and a fair reading of the statute is that after claims against the undersigned are dismissed the undersigned will no longer be a disqualified "party" to the proceeding within the meaning of the statute.

That interpretation does not go as far as the authority, cited above, that *reassignment* of claims against the presiding judge permits that judge to continue adjudicating claims against other defendants.  Certainly, if such partial reassignment cures disqualification, then *dismissal* of claims against the presiding judge would permit

adjudication of claims against other defendants.  *See Gordon,* 2024 WL 5411363 at *3;

*Kelmar,* 2012 WL 12854894 at *3-4, *merits decision at* 2012 WL 12850425, *aff'd* 599

Fed.Appx. 806.  *See also* Advisory Opinion No. 69 (reproduced in 2B *Guide to Judiciary*

*Policy,* § 220) (disqualification due to stock ownership often can be mooted by disposing

of the stock).

Moreover, the foregoing interpretation accords with statutory intent which, as

noted at the start of this discussion, is a balancing act in which there is as much

obligation <u>not</u> to recuse when there is no occasion to do so as there is to recuse when

disqualification is required.  As noted above, being too eager to disqualify (i) would

enable litigants to "game the system" with judge shopping, delays, undue expense, etc.,

(ii) would unduly burden the judiciary, and (iii) would, instead of bolstering public

confidence in the judiciary, undermine that confidence.  Geyh & Kimberling, Judicial

Disqualification, Part I.B., at pp. 8-9.

In addition, all three of these dangers are exponentially increased in this time

when litigants and attorneys can so easily find templates online, or use artificial

intelligence, to generate huge volumes of somewhat plausible-sounding pleadings and

learn tactics such as suing the presiding judge in multiple *fora*.  *See, e.g., In re Luna*

(Case No. 2:25-bk-13083-NB, Bankr. C.D. Cal. 2025) dkt. 39, p. 4 *and passim* (self-

represented litigant included verbatim, in the text of his pleading, both his inquiry to

ChatGPT and its response).

For all of the foregoing reasons, the ruling of the undersigned is that

disqualification will last only until Mr. Kerr's claims against the undersigned are

dismissed.  Once that happens, these proceedings could be transferred back to the

undersigned, in whole or in part, if the new judge would find that helpful or necessary.

*But cf. DeFazio v. Hollister, Inc.,* 2007 WL 926510 at *3 *and passim* (E.D. Cal.) ("the

court's initial reason for disqualification is no longer present," but "in an abundance of caution" the court would "not resume control of the case").[5]

### h. Notwithstanding the disqualification of the undersigned, it is mandatory and appropriate to have considered other issues of jurisdiction and authority

It has been necessary and appropriate for the undersigned to examine issues of jurisdiction and authority, as was done at the start of this discussion, notwithstanding the ultimate conclusion that disqualification is required.  First, federal courts have a duty to examine those matters.  *AWTR*, 547 B.R. 831, 833-34.  Second, there is a "chicken and egg" issue: how can the undersigned examine whether he should disqualify himself if he lacks jurisdiction to do so?  Third, as discussed above, the issues of jurisdiction and authority are intertwined with the disqualification issues, because they include whether the undersigned (i) should request and direct the Clerk of this Bankruptcy Court to reassign the Adversary Proceedings to another Bankruptcy Judge or (ii) should recommend to the District Court that it withdraw the reference.

### E. CONCLUSION

The undersigned will issue a separate order in each Adversary Proceeding (A) disqualifying himself from presiding over such Adversary Proceeding (pursuant to 28

---

[5]    Procedurally, the Federal Action would not be "reassigned" to the undersigned because its removal was a nullity.  But the Federal Action still could be transferred to the undersigned to deal with Trustee's defenses if not for all purposes, given the intertwined nature of the claims against all Defendants and Mr. Kerr's two bankruptcy cases before the undersigned.

The State Action (removed to Adv. No.  1341), could be sent back to the undersigned by whichever new judge is presiding over that matter.  (Another alternative would be to remand the State Action to the State Courts, but that is not recommended (i) to avoid duplicative proceedings (the State Action and Federal Action are largely duplicative, although the sets of Defendants are slightly different), (ii) to avoid the risk of inconsistent orders or judgments, (iii) to avoid wasting judicial resources, (iv) to avoid added delay and expense for parties, and (v) to reduce the opportunities for further abusive tactics arising from jurisdictional "ping-pong.")

In both the State Action and the Federal Action, a "directed reference" appears to be the proper procedural mechanism for any transfers by the District Court to the undersigned (or to a different Bankruptcy Judge, although that is not recommended).  *See Thomas Steel,* 101 B.R. 16, 22 (citations omitted).  If the new judge is another Bankruptcy Judge, any reassignment would be handled by that Judge and the Bankruptcy Clerk's Office.

U.S.C. § 455(b)(5)(i)), and (B) recommending to the District Court that it withdraw the reference (pursuant to 11 U.S.C. § 105(a) and 28 U.S.C. § 157(d)).  If the District Court declines to do so, either expressly or implicitly (through the passage of an amount of time set forth in that order without such withdrawal), then the undersigned will request and direct the Clerk of this Bankruptcy Court to reassign the Adversary Proceedings randomly to another Bankruptcy Judge within this district.

Later on, after the anticipated dismissal of Mr. Kerr's claims against the undersigned, the new judge (*i.e.,* either the District Judge or the new Bankruptcy Judge) could opt to transfer the remainder of the proceedings to the undersigned.  But that is not actually recommended.

To be clear, the undersigned is willing and able to accept any such transfers. Also, it is true that such transfers would have the advantages that (x) the new judge will not have to "reinvent the wheel" by learning about the history of Mr. Kerr's bankruptcy cases and (y) Trustee will retain the benefit of a decision by the judge who knows the most about her conduct during those bankruptcy cases, which form the basis of Mr. Kerr's claims against her.

Nevertheless, in the particular circumstances presented in these matters, it might be easier for any new judge simply to decide the pending motions to dismiss and related matters.  Nor does it appear that doing so would unduly burden or prejudice Trustee or any other party.

The bottom line is that it will be up to the new judge to determine what to do, and the undersigned stands willing and able to assist.  The undersigned hopes that the foregoing analysis will be helpful to whichever new judge presides over these matters.

### 

Date: January 13, 2026

Neil W. Bason
United States Bankruptcy Judge

# CERTIFICATE OF SERVICE

I, the below-named deputy clerk of the United States Bankruptcy Court, certify that I placed a true and correct copy of the attached document in a sealed envelope for collection and mailing, no later than the next business day that is not a court-observed holiday, in the United States mail, first class, postage prepaid, and addressed as follows:

Plaintiff/Debtor
Clifton Kerr
c/o 3 Skyview Circle
Pomona, CA 91766

Defendant
McCarthy & Holthus LLP
ATTN: Officer or Managing Agent
2763 Camino Del Rio South Suite 100
San Diego, CA 92108

Defendant
Melissa Coutts, Esq.
c/o McCarthy and Holthus LLP
2763 Camino Del Rio South Suite 100
San Diego, CA 92108

Defendant
JaVonne M. Phillips, Esq.
c/o McCarthy and Holthus LLP
2763 Camino Del Rio South Suite 100
San Diego, CA 92108

Defendant
Jennifer C. Wong, Esq.
c/o McCarthy and Holthus LLP
2763 Camino Del Rio South Suite 100
San Diego, CA 92108

Defendant
Kathy A Dockery
Chapter 13 Trustee
801 S. Figueroa Street Ste. 1850
Los Angeles, CA 90017

☒ Service information continued on attached page

Date:    1/13/2026      Signature:    _____/s/ Dina Johnson_____
                        Deputy Clerk [*printed name*]:    ___Dina Johnson_____

<u>Defendant</u>
Hon. Leslie B. Gutierrez
Judge of the Superior Court of California, County of Los Angeles
c/o Cummings, McClorey, Davis, Acho & Associates, P.C.
3801 University Avenue, Suite 560
Riverside, CA 92501

<u>Defendant</u>
State of California
Rob Bonta, Esq.
Attorney General of California
1300 I Street, Ste. 125
Sacramento, CA 95814

<u>Magistrate Judge</u>
Hon. Stephanie S. Christensen
United States Magistrate Judge
Edward R. Roybal Federal Bldg. and U.S. Courthouse
Courtesy Dropbox Outside of Ste. 1200
255 E. Temple St.
Los Angeles, CA 90012

<u>District Judge</u>
Hon. Sherilyn Peace Garnett
United States District Judge
First Street U.S. Courthouse
Courtroom 5C, 5th Floor
350 W 1st Street
Los Angeles, CA 90012

<u>Counsel for Bankruptcy Judge Bason</u>
Zakariya K. Varshovi, Esq.
Assistant United States Attorney
300 N. Los Angeles St., Ste. 7516
Los Angeles, California 90012